UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
INTELLI-CHECK, INC.,

                                          Plaintiff,

            -against-                                    <u>MEMORANDUM</u>
                                                         <u>OPINION AND ORDER</u>

TRICOM CARD TECHNOLOGIES, INC.,
MARK BAUGHMAN and STEPHEN STONE,                         CV 03-3706 (DLI) (ETB)

                                          Defendants.
------------------------------------------------------------------------x

        Before the Court is plaintiff Intelli-Check, Inc.'s ("Intelli-Check" or "plaintiff") motion

for sanctions against the defendants.[1]  The plaintiff requests an order which: (1) disqualifies

defendants' litigation counsel from any further involvement with this case; and (2) compels

defendants and their law firms, jointly and severally, to pay reasonable costs and attorneys' fees

expended in connection with uncovering alleged misconduct which is the subject of this motion

and in opposing defendants' motion to dismiss the Second Amended Complaint.[2] (Pl.'s Mem. of

_____

        [1]In addition to this motion for sanctions, plaintiff also filed a formal motion requesting
that the defendants be precluded from asserting the affirmative defenses and counterclaims
raised for the first time in defendants' answer to the second amended complaint.  This request
was denied.  (<u>See</u> Memorandum Opinion and Order of the undersigned, dated November 3,
2005.)

On August 18, 2005, defendants requested leave to file a motion to enjoin Intelli-Check's CEO
and others connected with Intelli-Check from issuing statements concerning this litigation.
Defendants also requested that Intelli-Check be directed to undertake a variety of remedial
actions designed to minimize any damage to defendants' reputation caused by the conduct of
those connected with the plaintiff. Defendants' motion was discussed at a conference before the
undersigned on September 14, 2005.  Defendants have not, to date, filed any such motion.

        [2]Plaintiff's motion also requests that the Court strike defendants' motion to dismiss.  On
November 30, 2005, Judge Irizarry, unrelated to this motion, administratively terminated the

1

Law in Supp. of Pl. Intelli-Check, Inc.'s Mot. for Sanctions ("Pl.'s Mem."), at 1.)

The conduct of which plaintiff complains in the pending motion for sanctions has been previously considered by the Court. The complained of conduct was the subject of plaintiff's motion to compel production of documents, filed by plaintiff on December 6, 2004. By Memorandum Opinion and Order dated December 23, 2004, I granted Intelli-Check's motion for an order compelling the production of certain documents and rejecting defendant Tricom's assertion of attorney-client privilege over certain documents submitted to the Court for in camera review. Plaintiff did not file any motion for sanctions with that motion to compel.

I.      BACKGROUND

A court deciding a motion for disqualification and monetary sanctions must give particular attention to the factual record. See MacDraw, Inc. v. CIT Group Equipment Financing, Inc., 73 F.3d 1253, 1262 (2d Cir. 1996) (finding that when imposing sanctions, a court "must do so with care, specificity, and attention to the sources of its power"); U.S. v. Standard Oil Co., 136 F. Supp. 345, 367 (S.D.N.Y. 1955) (stating that when deciding a motion for disqualification, "the conclusion in a particular case can be reached only after painstaking analysis of the facts and precise application of precedent"). Accordingly, the relevant history of this action is set below.

A.      Overview

Defendants Mark Baughman ("Baughman") and Stephen Stone ("Stone") are the majority shareholders of corporate defendant TriCom Card Technologies ("TriCom"), a closely

_____

defendants' motion to dismiss. By letter dated December 2, 2005, plaintiff withdraws without prejudice that portion of its motion seeking to strike the defendants' motion to dismiss.

held corporation. Intelli-Check alleges that Stone and Baughman, through TriCom, intentionally infringed Intelli-Check's patents for electronic identification and age verification technology. The complaint and first amended complaint in this action named a single defendant– the corporate defendant TriCom. Intelli-Check filed a second amended complaint on May 17, 2004, which includes claims of false advertising and which names Stone and Baughman as individual defendants under a corporate veil piercing theory. Plaintiff alleges in its second amended complaint that Baughman and Stone organized TriCom as a sham, judgment-proof corporation, maintained to shield Baughman and Stone from individual liability. Defendants Baughman, Stone, and TriCom are jointly represented by David Yohannan ("Yohannan") and Thomas Gilbertsen ("Gilbertsen") of the firm Collier Shannon Scott, PLLC.[3] A third attorney, James Coonan ("Coonan") of the Chicago law firm Masuda Funai, was– and still may be– counsel to the defendant TriCom, but does not appear as counsel in this action.

The most useful starting point for purposes of the motion is December 10, 2002. On December 10, 2002, a meeting occurred between Baughman, Stone, and Coonan. Coonan had served as counsel for TriCom when it was sued by the third founding shareholder, John Sherry, on allegations of minority shareholder oppression. Coonan testified at his deposition that, on his suggestion, the meeting constituted a meeting of TriCom's board of directors. (Coonan Deposition, dated November 19, 2004 ("Coonan Dep."), at 119.) The only other person present at the meeting was Corine Sanchez ("Sanchez"), a bookkeeper and erstwhile general helper from

---

[3]Defendants' local counsel is John Webb ("Webb") of the firm Reed Smith LLP. Plaintiff does not seek sanctions against Webb or his firm.

TriCom, who was employed as an independent contractor rather than an employee.  (Id. at 122-23.)  Coonan took handwritten notes at the meeting, and those notes are significant in the conduct that is the subject of  plaintiff's motion.

Coonan testified that he took notes for himself during the meeting, but that the notes did not memorialize what was discussed at the meeting.  (Id.)  ("These are the notes that I recorded for myself at the meeting in which discussions were proceeding at a very rapid pace. They're not an attempt to memorialize the meeting. . . .")  Despite Coonan's testimony, defendants' counsel represent that these handwritten notes constituted a draft of formal meeting minutes, which were later reduced to a typewritten version and presented as the final formal minutes of the meeting. (Defs.' Reply Brief on Motion to Dismiss, annexed to McGeary Cert. Vol. 2 at Exh. 8.)  In defendants' motion to dismiss (which, as noted above, was terminated by Judge Irizarry on November 30, 2005), defendants rely on these minutes, as well as corporate actions which were purportedly discussed at the December 10, 2002 meeting, as evidence demonstrating that corporate formalities were adhered to and that  TriCom observed corporate formalities.  (Defs.' Mot. to Dismiss, Exh. B, Tab 1 and Tab 2.)

On January 30, 2003, Coonan sent an e-mail to Baughman, Stone and Sanchez, discussed further infra, which purports to attach typewritten "minutes" of the December meeting (quotes in original).  On October 14, 2004, plaintiff filed a letter motion seeking the minutes attached to the e-mail.  The defendants contended that the minutes were protected by privilege.  On October 19, 2004, defendants submitted the following to the Court for in camera inspection: (1) the January

30, 2003 e-mail, (2) the typewritten draft minutes, (3) a May 11, 2004 letter from Coonan to

Baughman and Stone, and (4) a privilege log.  Significantly, the log listed the recipients of the

January 30, 2003 e-mail as Baughman, Stone and Joji Kaegi, a partner at Coonan's firm.

(TriCom Card Technologies Supplemental Privilege Log, annexed as Exh. 16 to Certification of

Vincent E. McGeary ("McGeary Cert.").)

On December 23, 2004, I rejected the defendants' privilege claims on the ground that a

subject matter waiver occurred based on representations made in defendants' then-pending

motion to dismiss.  (Memorandum Opinion and Order by the undersigned, dated December 23,

2004, at 5-6.)  I held that the defendants placed the December 10, 2002 meeting in issue, and

cannot hide behind the shield of the attorney-client privilege to mislead the plaintiff or the Court.

(Id. at 5-6.)  I further found that any privilege asserted over the January 10, 2003 e-mail was

waived by virtue of Ms. Sanchez's receipt of the e-mail, as well as the subsequent voluntary

production of the e-mail by TriCom's general counsel at Masuda Funai.  (Id. at 6-7.)

Accordingly, I directed the defendants to turn over unredacted copies of the documents.

Thereafter, plaintiff received two versions of the January 30, 2003 e-mail: one copy produced by

Coonan's law partner, Edward Underhill, at Coonan's deposition,[4] which indicates Baughman,

Stone, and Corine Sanchez as recipients, and a second version produced by Yohannan, which

differed in that it indicates Baughman and Stone as recipients and Joji Kaegi as a carbon copy

---

[4]In anticipation of deposing Coonan as a third-party witness, plaintiff served a document
subpoena upon Coonan and his law firm.  On October 27, 2004, the Northern District of Illinois
denied Coonan's motion to quash the subpoena, and Coonan's firm turned over the documents,
which included a copy of the January 30, 2003 e-mail.

recipient.  It was upon  receipt of these documents that plaintiff first learned that Corine Sanchez

had also received the January 30, 2003 e-mail, thereby further destroying any claim of privilege

that may have otherwise attached to the document.  (Pl.'s Mem. at 16-17; see also Memorandum

Opinion and Order by the undersigned, dated December 23, 2004, at 6 ( "The defendants'

attempted explanation of the second version of the e-mail– the one addressed to Ms. Corine

Sanchez– is inadequate and unconvincing and, thus, the defendants have failed to establish the

element of confidentiality, which is requisite to assertion of the privilege.").)  Significantly,

Sanchez's name had not appeared on the privilege log previously submitted to the Court and to

plaintiff.  Moreover, Sanchez had not appeared as a recipient on the copy of the e-mail submitted

to the Court for in camera inspection.  (Pl.'s Mem. at 16-17.)  Plaintiff suggests that Sanchez's

name was deliberately removed from the privilege log and the e-mail submitted to the Court to

enable the defendants to cling to the claim of privilege in order to avoid turning over the

potentially damaging document.  (Id. at 25.)

Defendants dispute the plaintiff's allegations, and argue that Yohannan first learned of

the discrepancy between the versions of the January 30, 2003 e-mail produced to the plaintiff at

the December 1, 2004 conference before the Court.  (Defs.' Mem. at 12.)  In response, plaintiff

notes that Yohannan was copied on a November 17, 2004 letter from Edward Underhill of

Masuda Funai to E. Evans Wohlforth at Gibbons, Del Deo that discusses the version of the

January 30, 2003 e-mail which lists Sanchez as a recipient.  (McGeary Cert., Exh. 25.)

Yohannan claims that he did not have time to read this letter.  Additionally, defendants now

insist that there is only one version of the January 30, 2004 e-mail (the version that Coonan

produced, indicating Sanchez received the e-mail), but offer little explanation for the discrepancy, other than the possibility that it arises from the fact that Yohannan and Coonan use different e-mail programs.  (Defs.' Mem. at 12-13.)

B.      The January 30, 2003 e-mail

The e-mail dated January 30, 2003, sent from Coonan to Baughman, Stone and Sanchez, with a "cc" to Joji Kaegi,  discusses the December 10, 2002 meeting. The e-mail states:

> I have attached "minutes" of our meeting in December.  As you will see, this is essentially approving a plan of action and setting forth a formal rationale.  Please let me know your comments, it is just my ideas on the matter and the facts may need some revision.  Rather than explain the underlying reasons, lets just chat about it after you have reviewed it.
>
> In the event that we need to give some legal notice to Sherry of the actions that we are taking (e.g. transferring the assets of TriCom to a new company in exchange for shares) and he gets his attorney fired up again, I am intending to send these minutes to show our justification.
>
> I have drafted documents to reduce the board of directors to two persons during 2002, which I will forward for signature with other documents at the appropriate time.

(January 30, 2003 e-mail, annexed as Exh. 5 to McGeary Cert.)

Plaintiff argues that this e-mail makes clear that the minutes are false in recording a proceeding that never happened in the way described.  (Pl.'s Mem. at 6.) Specifically, plaintiff states that the e-mail demonstrates (1) that Sherry had no notice of the meeting and that the draft of the "minutes" was to gain an advantage over Sherry; (2) that the corporate actions reducing the Board and eliminating Sherry had not been forwarded to Baughman and Stone as of January 30, 2003; and (3) Coonan did not want to set forth in writing the complete motives behind the

purported minutes.  (Id.)  Plaintiff also states that during Coonan's deposition, Coonan admitted

that the final, typewritten version of the "minutes" were not true minutes.  (Coonan Dep., 103-

104) ("Q: Do these minutes accurately reflect what happened at the meeting? A: No.".)


C.      The May 11, 2004 Letter

Also of significance to the plaintiff's motion is a May 11, 2004 letter transmission from

Coonan to Baughman and Stone.

According to Coonan, after January 30, 2003, no communication occurred between him

and Baughman and Stone until April of 2004.  Thereafter, Coonan transmitted via e-mail

attachment a letter dated May 11, 2004, addressed to Baughman and Stone. (Letter dated May 11,

2004, annexed as Exh. 3 to McGeary Cert.)  The timing of the letter coincides with both the filing

of John Sherry's lawsuit against TriCom (Coonan's explanation for why he drafted the letter)

(Coonan Dep. 183:5-13), and with plaintiff's revelation that the complaint would be amended to

include Baughman and Stone as individual defendants (plaintiff's explanation for why Coonan

drafted the letter).  Although the letter is not addressed or carbon copied to Yohannan,  plaintiff

asserts that it is "an intuitively obvious fact" that Yohannan received an electronic copy of the

letter at the time it was transmitted to Stone and Baughman, because other correspondence in the

record from Coonan's firm is "blind carbon copied to" Yohannan.  (Pl.'s Mem. at 19.)  Plaintiff

argues that a copy of the original cover sheet to the transmittal would reveal that Yohannan

received a copy, however, defendants claim that the original no longer exists.[5] (Id.)

---

[5]Defendants produced two different versions of the document: one version as produced
by Yohannan and one version that the defendants assert was received from Coonan.  Plaintiff
insisted upon the production of the original, as directed by the Court's order.  Yohannan has

The letter reads as follows:

Re: Minutes of the Corporation

Gentlemen:

This letter accompanies several documents for your signature.

Due to the company's involvement in two pieces of litigation, I want to carefully explain the nature of the documents that are enclosed. As you will recall, I met with you on December 10, 2002 in Torrance, California. At that time, we discussed the strategy for the company following John Sherry's withdrawal from settlement negotiations that we had worked out with his attorney.

We discussed the fact that no formal action of the shareholders or board of directors were taken after Sherry initiated legal maneuvers in May of 2002. We agreed that it was appropriate to take formal action to specify the directors and officers. Each of you desired that the board of directors be reduced to two members, being only yourselves. Also, you directed that Mark would be President and Steve would be Vice-President and Secretary. Sherry would have no position as an officer or director.

I recommended, and you agreed, that these actions be set forth in formal, written actions to be dated December 2 and December 3, respectively. Thereafter, a lengthy meeting was held in which I acted as the secretary of the meeting and prepared minutes that you subsequently reviewed in January of 2003. A copy of the December 10, 2002 meeting minutes, in the form placed in the company's minute book, is enclosed.

After January of 2003, we ceased to have contact until the recent filing of a lawsuit by Sherry. I believe the reason was that the attacks from Sherry had subsided, and the company felt it must limit legal expense during its formative period.

You have now verified that you have not signed the written actions dated December of 2002. (I could not remember if copies were left

---

represented to the Court that the original no longer exists.

9

with you at that time). Therefore, I have enclosed shareholder and director actions dated December 2 and 3, respectively, for your signature.

It is acceptable to sign such actions after the effective date when the shareholders and directors are documenting actions that they approved at the time, but simply did not reduce to writing. Nevada corporate law permits this.

Nevertheless, we must caution you that this issue could arise in litigation. In such case, our advice is to be forthright in stating that the actions were physically signed in May of 2004, although dated to be effective in December of 2002. We will address any issues concerning the legal impact of these actions in our defense of this litigation.

We have also confirmed with you that no actions of the shareholders or directors were taken between December of 2002 and May of 2004.

In order to update the records of the company, I have also enclosed actions dated May 11, 2004, as follows:

-Actions of the shareholders to select directors
-Action of the directors to reelect officers and approve indemnification of the officers and directors against the lawsuit initiated by Sherry.

\*     \*     \*

(Letter dated May 11, 2004, annexed as Exh. 3 to McGeary Cert.)

Plaintiff relies on this letter as evidence that: (1) the corporate actions and meeting minutes were intended to constitute false evidence that TriCom observed corporate formalities; (2) as of December 10, 2002, Sherry was still a director of TriCom and received no notice of the meeting; (3) Coonan is lying about not remembering if he left copies of the actions from December 2002 with Baughman and Stone at the December 10, 2003 meeting, since he acknowledges the documents were not drafted until January 2003 at the earliest; and that (4) the

effective dates of December 2 and 3, 2003 are demonstrably false because the letter states the subject of the actions was discussed at a December 10, 2002 meeting.  (Pl.'s Mem. at 6-10.)

In defendants' opposition to the motion, defendants deny that the May 7, 2004 letter from plaintiff's counsel to Yohannan (advising him that plaintiff intended to add Baughman and Stone to the action as individual defendants) was transmitted to Coonan.  (Defs.' Mem. at 2.) Defendants argue that they never informed Coonan of plaintiff's intention to add Baughman and Stone as individual defendants, and Coonan testified in his deposition that he was not aware at the time that he circulated the May 11, 2004 letter and draft minutes that Baughman and Stone would be sued individually herein.  (Coonan Dep. at 183-186.)  Coonan testified that he did not send a copy of the May 11, 2004 letter to Yohannan until October 13, 2004.  (Defs.' Mem. at 10; see also Defs.' Mem., Ex. 1; Coonan Dep. at 180-81.)  To explain the timing of the May 11, 2004 letter, defendants argue that the letter was drafted in response to Sherry's lawsuit against Tricom, filed in April 2004, and that it had nothing to do with Intelli-Check adding Baughman and Stone as individual defendants to the present lawsuit.  (Defs.' Mem. at 8.)

Upon an earlier consideration of the letter, in the context of a prior motion, I  noted that: "[a] finder of fact could view the May 11, 2004 correspondence as further evidence that such meetings never occurred as asserted by the defendants and that defendants' counsel is post facto setting forth a scenario to suggest and explain certain weaknesses and inconsistencies in this action that go directly to defendants' claim that it has adhered to all the corporate formalities and that Tricom is not the alter ego of the individual defendants."  (Order of the undersigned, dated

December 23, 2004, at 6.)

D.     The Deposition Testimony

Plaintiff also supports its motion for costs by the deposition testimony of Baughman and Stone.  (Pl.'s Mem. in Supp. at 24, 30.)  Baughman initially testified that he reviewed the minutes of the December 10, 2002 meeting "shortly after [the document] was prepared," but then later acknowledged that the meeting minutes were created in approximately May 2004.  (Baughman Dep., at 438: 150-440:12, 472:1-11.)  Stone testified that he saw the corporate action of December 2, 2002, reducing the Board to two, "approximately around this date, December 2002."  (Stone Dep., at 80:14-22.)  He stated that he saw the December 3, 2002 action in the "early part of December, as dated,"and that he had not seen it since.  (Id. at 84:10-17.)  He further testified that he saw the final version of the meeting minutes in the early part of December 2002. (Id. at 86:4-13.)  Plaintiff contends that Coonan's January 30, 2003 e-mail establishes that Stone could not have seen the corporate actions in early December 2002 because they were not circulated until May 11, 2004, with Coonan's e-mail.  (Pl.'s Mem. in Supp. at 12.)


Defendants contend that Stone's testimony is explained by the fact that there are "two versions of the December 10, 2002 meeting minutes– a draft created shortly after the meeting and sent to Baughman and Stone via the January 30 email, and a virtually identical final version created in May of 2004."  (Defs.' Mem. at 18, comparing Pl.'s Mem. Ex. 4 T018705-172 with Defs.' Exh. 2.)  Coonan weighs in with another version.  He testified that he did not circulate the first draft of the minutes until January 30, 2003, thereby precluding Baughman and Stone from seeing a draft in 2002.  (See Coonan Dep. at 130.)

E.    Summary

In sum, plaintiff argues that it is entitled to sanctions based on the contention that defendants and their counsel fabricated documents and made false claims to the Court and to the plaintiff in order to gain an advantage in this litigation.  More particularly, plaintiff alleges that the May 11, 2004 letter from Coonan to Baughman and Stone was drafted with this litigation in mind, as an attempt to bolster Baughman's and Stone's defense to the individual liability claims, after learning from Yohannan four days earlier that plaintiff intended to amend the complaint to add them as individual defendants  (Pl.'s Mem. at 25.)  Plaintiff argues that the corporate actions were drafted, backdated, and signed by Baughman and Stone in an effort to suggest that corporate formalities were observed.  Moreover, plaintiff contends that on May 26, 2004, Yohannan produced the documents to the plaintiff as part of a series of older corporate documents, arranged in such a manner to suggest they were kept in the normal course of business.  (Id. at 7-9.)  Plaintiff further alleges that Stone falsely testified that he had reviewed the December 2 and 3, 2002 corporate actions in early December and that he had not seen them since in order to conceal that the corporate actions were not prepared and executed until May 2004.  (Id. at 25.)

Finally, plaintiff asserts that sanctions are warranted based on the direct and circumstantial evidence that Yohannan has engaged in serious misconduct throughout the course of this action.[6]  Plaintiff contends that direct evidence demonstrates that Yohannan: (1)

---

[6]By letter dated November 14, 2005, the plaintiff's law firm advised the Court that the District of New Jersey quashed defendants' subpoenas of plaintiff's trial counsel McGeary and McKenna and their law firm, Gibbons, Del Deo, Dolan, Griffinger & Vecchione.  Plaintiff

submitted to the Court and to the plaintiff a false privilege log and an altered e-mail, both of which materially aided the defendants' attempts to protect certain potentially damaging documents from discovery; (2) failed to advise the Court of the two versions of the e-mail during a December 1, 2004 conference discussing the January 30 e-mail ; (3) withheld certain documents in reliance on disingenuous claims that the documents were privileged; (4) misrepresented to the Court that the December 10, 2002 minutes were a typewritten reduction of Coonan's notes; (5) failed to preserve the original version of the May 11, 2004 e-mail transmission sheet; and (6) repeatedly failed to correct information before the Court that he knows to be false  (Pl.'s Mem. at 27-28.)  Plaintiff further alleges that circumstantial evidence demonstrates that Yohannan conspired with Coonan to draft the May 11, 2004 letter, and then sat idly by as his clients gave false deposition testimony on the topics covered by May 11, 2004 letter.  (Id.)

## DISCUSSION

I.      Disqualification of Counsel

Motions to disqualify opposing counsel are generally disfavored under Circuit law because they are often filed for tactical reasons and result in unnecessary delay, and they pose the threat of an immediate adverse effect on the client by separating him from counsel of his choice.  Tylena M. v. Heartshare Human Services, No. 02 Civ. 8401, 2004 WL 125945, at *2

---

suggests that certain of that court's findings are relevant to the present motion, including the court's observations that defendants' counsel had misstated the law, as well as "frivolously [invoked] an inequitable conduct defense as grounds for seeking oppressive and harassing depositions of adverse counsel."  See Intelli-Check, Inc. v. TriCom Card Technologies, Inc., No. 04-5108, at 11 (D.N.J. Nov. 9, 2005) (unpublished opinion).  The Court rejects the plaintiff's invitation to inject the findings of the District of New Jersey on a motion to quash a subpoena into this Court's consideration of plaintiff's motion for sanctions.

(S.D.N.Y. June 7, 2004).  Thus, a court has the authority to disqualify counsel, upon close

scrutiny of the facts, only  "where necessary to preserve the integrity of the adversary process."

Board of Ed. of City of New York v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979).  The movant

bears "a heavy burden" of showing that disqualification is warranted.  Evans v. Artek, 715 F.2d

788, 794 (2d Cir. 1983).  With certain exceptions not applicable here, disqualification has been

found necessary to avoid tainting the trial only where attorney conflict of interest violative of

Canons 5[7] and 9[8] of the Code of Professional Responsibility undermines the court's confidence

in the attorney's ability to vigorously represent his client, or where an attorney is in a position to

use privileged information obtained during prior representation of the other side in order to give

his present client an unfair advantage in litigation.  Nyquist, 590 F.2d at 1246 (citations omitted).

In the absence of such conduct, a court should be hesitant in granting a motion to disqualify,

even though the court may harbor misgivings about an attorney's conduct.  Id.  (noting that

"[g]iven the availability of both federal and state comprehensive disciplinary machinery, there is

usually no need to deal with all other kinds of ethical violations in the very litigation in which

they surface.") (citation omitted). See also Frontline Communications Intern. v. SprintFrontline

Communications Intern., 232 F. Supp. 2d 281 (S.D.N.Y. 2002) ("The Second Circuit has clearly

and repeatedly held that a violation of the Code of Professional Responsibility should result in

disqualification only when the violation taints the integrity of the proceeding before the court.")

(citations omitted).

---

[7] Canon 5 instructs: "A lawyer should exercise independent judgment on behalf of a
client."

[8] Canon 9 instructs: "A lawyer should avoid even the appearance of processional
impropriety."

Plaintiff argues that disqualification is warranted in this case in order to eliminate existing conflicts of interest and to avoid the danger of tainting the trial. Plaintiff bases its motion on defendants' alleged spoilation of evidence (with regard to the May 11, 2004 transmittal cover sheet), creation of fraudulent documents, misrepresentations to the court, and false testimony. Plaintiff states that it took eight months to uncover the alleged misconduct discussed <u>supra</u>, and that "[t]he danger of taint of the trial exists in the fact that there will be no opportunity to engage in this kind of exhaustive digging to ferret out untruths once the jury is sworn." (Pl.'s Mem. at 21-22.)

Plaintiff further contends that several distinct sources of conflict of interest exist in this case. First, plaintiff argues, "the joint and several nature of the liability for intentional patent infringement creates substantial exposure for each defendant who cannot extricate himself or itself at the cost of a co-defendant." (Pl.'s Mem. at 29.) Plaintiff asserts that Stone and Baughman have offered contradictory testimony concerning the division of responsibility in TriCom, and that no one is representing the company's interest. (<u>Id.</u> at 29-30.) Plaintiff contends that therefore, it is "impossible" to continue this matter with a single attorney representing all the defendants. (<u>Id.</u>) In support of its argument, plaintiff invokes New York Disciplinary Rule 5-105(B), which prohibits a lawyer from multiple representation of clients if the representation will adversely affect the lawyer's obligation to exercise independent professional judgment. (<u>Id.</u> at 28.) Plaintiff states that under the rule, a lawyer may only represent parties with a conflict of interest if the lawyer secures an express waiver from the clients. (<u>Id.</u> at 30.) Plaintiff states that defendants' lawyers have failed to obtain a waiver,

although neither the defendants' counsel, nor defendants themselves, have so stated.[9]  (Id. at 29-30.)

Plaintiff argues that a second conflict exists between the defendants themselves and their lawyers, arising from an interest that each litigant and each attorney has in absolving himself of blame for any potential finding of misconduct.  (See id.)  Where a disqualification motion is based on the movant's allegation that a conflict exists, the court must first determine whether a conflict does in fact exist.  Vegetable Kindgom, Inc. v. Katzen, 653 F. Supp. 917, 923-24 (N.D.N.Y. 1987) (denying motion for disqualification where the motion was founded upon "form, not substance").  Here, plaintiff has not demonstrated with any degree of probability that such conflicts exist.  The three defendants in this action– Baughman, Stone, and Tricom– are aligned in their defense to plaintiff's allegations of patent infringement, false advertising, and alter ego claims, and no facts are before the Court which would indicate that the defendants' respective defensive postures are in tension such that their interests can only be protected if each had separate counsel.  Plaintiff asserts that conflicts have arisen based on conflicting deposition testimony regarding who runs TriCom, but this is simply plaintiff's conjecture.

Further, the conduct plaintiff complains here of is in large part attributed to James Coonan, who is not an attorney associated with defendants' counsel herein, and who has never appeared in this action and who therefore cannot be disqualified.  Additionally, plaintiff argues

_____

[9]In support of its assertion that defendants' counsel have not obtained waivers from their clients, plaintiff cites to the testimony of defendant Stone, wherein he states that he was not aware that the testimony of Baughman or Ms. Sanchez could be used against him at trial.  (See Stone Dep. 150.)  Plaintiff suggests that this testimony demonstrates that defendants' counsel did not obtain waivers from their clients concerning joint representation of the defendants.

generally that the threat of trial taint is present because when the trial begins, there will no longer be an opportunity for the plaintiff to uncover any misconduct defendants may engage in at that time. However, such speculative conjectures are insufficient to meet plaintiff's burden to show a significant risk of trial taint. See, e.g., Glueck v. Jonathan Logan, Inc., 653 F.2d 746, 748 (2d Cir. 1981) ("Recognizing the serious impact of attorney disqualification on the client's right to select counsel of his choice, we have indicated that such relief should ordinarily be granted only when a violation of the Canons of the Code of Professional Responsibility poses a significant risk of trial taint."); Bulkmatic Transport Co., Inc. v. Pappas, No. 99 Civ. 12070, 2001 WL 504841, at *2 (S.D.N.Y. May 11, 2001) (denying disqualification motion where movant's "allegations are too vague and conclusory to meet the heightened burden of proof required for a motion to disqualify"); Rocchigiani v. World Boxing Counsel, 82 F. Supp. 2d 182, 189 (S.D.N.Y. 2000) (denying plaintiff's disqualification motion where the danger of trial taint was not obviously present).

I further note that plaintiff's position on disqualification is based on an adversary's view of the evidence. Plaintiff's counsel has drawn a favorable inference wherever possible. In effect, plaintiff's application seeks disqualification and sanctions arising out of disputed conduct which is the prerogative of the trier of facts to resolve.

Moreover, defendants' litigation attorneys have invested significant time, energy, and resources in this case since it began more than two years ago. This action has had a tortured history, and should be trial ready in early 2006 (discovery is scheduled to be completed by January 30, 2006). Defendants would suffer severe prejudice should their attorneys be disqualified at this point in time. Tylena v. Heartshare Human Services, No. 02 Civ. 8401, 2004

WL 125945, at * 3 (S.D.N.Y. June 7, 2004) (denying disqualification motion and noting that where counsel had been engaged for over one year in preparation of lawsuit, "[d]isqualification of present counsel and the substitution of a new attorney unfamiliar with the facts and the law will inevitably result in further harmful delay and expense" to plaintiff).

II.    Motion for Monetary Sanctions

Plaintiff argues that sanctions should be imposed against the defendants, pursuant to 28 U.S.C. § 1927 and the court's inherent power,  based on defendants' "frivolous positions, misrepresentations to the Court, vexatious multiplication of proceedings and discovery abuses to gain their ends."  (Pl.'s Mem. at 32.)

A.    Sanctions Pursuant to 28 U.S.C. § 1927

28 U.S.C. § 1927 provides that any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  The purpose of the statute is "to deter unnecessary delays in litigation."  H.R. Rep. No. 96-1234, at 8 (Conf. Rep.), as reprinted in 1980 U.S.C.A.A.N. 2716, 1782.  Sanctions under Section 1927 are warranted "when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay."  United States v. International Brotherhood of Teamsters, 948 F.2d 1338, 1345 (2d Cir. 1991) (citing Oliveri v. Thompson, 803 F.2d 1265, 1274 (2d Cir. 1986), cert. denied, 480 U.S. 918, 107 S. Ct. 1373, 94 L. Ed. 2d 689 (1987)).  Additionally, the Second Circuit Court of

Appeals has established that a finding of bad faith on the part of the attorney is a prerequisite to imposing sanctions under this statute.  International Brotherhood of Teamsters, 948 F.2d at 1345 ("Bad faith is the touchstone of an award under this statute.").  The Second Circuit has emphasized that, in imposing sanctions, the trial court must find clear evidence that the offending party acted for improper purposes.  Revson v. Cinque v. Cinque, 221 F.3d 71, 78 (2d Cir. 2000).

Plaintiff's argument for sanctioning the defendants is cast in very general terms.  (See Pl.'s Mem. 31-33.)  The conduct that plaintiff most clearly characterizes as having been conducted in bad faith, an element required for the purposes of Section 1927 sanctions, is defendants' withholding of the documents based on claims of privilege.  (Id. at 33.)  However, in order for conduct to be sanctionable under Section 1927, a court must find "clear evidence" that the offending party's assertions were entirely meritless.  Pro Bono Investments, Inc. v. Gerry, No. 03 Civ. 4347, 2005 WL 2429767, at *2 (S.D.N.Y. Sept 30, 2005).  Here, although defendants' argument that the documents were privileged was erroneous, there is not clear evidence that the privilege claim was meritless.  See Arkwright Mutual Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, No. 90 Civ. 7811, 1994 WL 510043, at *4 (S.D.N.Y. Sept. 16, 1994) (denying sanctions where defendant had the practical ability to obtain documents in the possession of its client's prior counsel and client's accounting firm, but failed to do so, finding that defendant's "failure to do so, however, was not so egregious as to warrant sanctions. . . particularly because [requesting party] was ultimately able to locate and subpoena these documents.").

Indeed, the record before the Court is replete with examples of conduct that the plaintiff

characterizes as the product of deceit and frivolity, and that the defendants characterize as the product of strategy grounded in reason and good faith. For example, plaintiff contends that defendants' counsel wrongfully asserted privilege over the January 30, 2003 e-mail copied to Sanchez, and falsified the privilege log to further the defendants' scheme to withhold the e-mail. However defendants' counsel denies the misconduct and offers a version of the facts which, if accepted, suggests that he did not receive– and was unaware of– a version of the e-mail including Sanchez as a recipient. Likewise, plaintiff contends that Coonan transmitted the May 11, 2004 letter to Baughman and Stone after learning that Baughman and Stone were to named individually in this lawsuit; defendants' counsel contends that the May 11, 2004 had nothing to do with plaintiff's actions, and instead was prompted by the filing of John Sherry's lawsuit against TriCom. As noted above, these are issues for resolution by the trier of the facts rather than by the Court.

Plaintiff has failed to meet the burden of demonstrating by clear evidence that defendants' counsel acted in bad faith to unreasonably and vexatiously multiply these proceedings, such that Section 1927 sanctions are warranted. Moreover, the arduous course of this litigation, now more than two years old, cannot be attributed solely to the defendants, as the plaintiff suggests that it should be. Both plaintiff's counsel and defendants' counsel have accused each other of misconduct, and both parties are equally blameworthy for the lengthy and bitter nature of this action. See Revlon, Inc. v. Heaven Scent Cosmetics, Ltd., No. CV 89-3582, 1991 WL 200209, at *12 (E.D.N.Y. Oct. 2, 1991) (denying sanctions where the "charges of misconduct in pre-trial proceedings by each lawyer against his adversary [was] amply supported by the record. We need not decide who is more culpable.")

B.      Sanctions Pursuant to the Court's Inherent Power

The plaintiff also requests that the Court exercise its inherent authority to sanction the defendants by imposing monetary sanctions on the defendants' counsel and the parties themselves.

The Supreme Court has held that a court has the inherent power to sanction an attorney and/or his client in the form of costs and fees or other appropriate relief for acting in bad faith, vexatiously, oppressively or wantonly. See Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 258-59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975). Such sanctionable conduct includes the perpetration of a fraud upon the Court. Chambers, Chambers v. NASCO, Inc., 501 U.S. 32, 46, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27 (1991)(quoting Universal Oil Products Co. v. Root Ref. Co., 328 U.S. 575, 580, 66 S.Ct. 1176, 1179, 90 L.Ed. 1447 (1946)). The factors a court must consider when determining whether to sanction a party based upon the perpetration of a fraud upon the Court are as follows:

> (1) whether the misconduct was the product of intentional bad faith; (2) whether and to what extent the misconduct prejudiced the other party; (3) whether there is a pattern of misbehavior, rather than an isolated instance; (4) whether and when the misconduct was corrected; and (5) whether further misconduct is likely to continue in the future.

McMunn v. Memorial Sloan-Kettering Cancer Center, 191 F. Supp. 2d 440, 461 (S.D.N.Y. 2002). Additionally, in order for the court to grant sanctions based upon an alleged submission of falsified evidence or material misstatements to the Court, it must be established by clear and convincing evidence that the party at fault has "set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate the action."

<u>Scholastic, Inc. v. Stouffer</u>, 221 F. Supp. 2d 425, 439 (S.D.N.Y. 2002) (citations omitted), <u>aff'd</u>

81 Fed. Appx. 396 (2d Cir. 2003).  <u>See also</u> <u>McMunn v. Memorial Sloan-Kettering Cancer</u>

<u>Center</u>, 191 F. Supp. 2d 440, 445 (S.D.N.Y. 2002) (stating that the essence of fraud upon the

court is "when a party lies to the court and his adversary intentionally, repeatedly, and about

issues that are central to the truth-finding process").


     Here, the plaintiff argues that the defendants and their counsel should be sanctioned for

conduct that, when taken as a whole as urged by the plaintiff, amounts to a conspiracy among the

individual defendants, their litigation counsel, and James Coonan to thwart Intelli-Check's

attempt to sue Baughman and Stone individually.  In order to succeed on its motion for sanctions

pursuant to the Court's inherent power, plaintiff must demonstrate by clear and convincing

evidence that this unconscionable scheme exists.  <u>Scholastic, Inc. v. Stouffer</u>, 221 F. Supp. 2d at

439.  Intelli-Check has failed to meet this burden.  Plaintiff's allegations of misconduct are an

advocate's view of the evidence, drawing all inferences favorable to the plaintiff and against the

defendants in this action.  For example, central to plaintiff's theory is the allegation that the May

11, 2004 letter was drafted by Coonan in an effort to protect Stone and Baughman from

individual liability, after Coonan was allegedly informed by Yohannan that Baughman and Stone

were being added to plaintiff's complaint as individual defendants.  Defendants deny this

allegation, and insist that the letter was drafted in response to a lawsuit initiated by Sherry,

Tricom's third founding partner, against it.  As noted above, this is an issue for the ultimate trier

of the facts rather than for the Court to decide on a motion for sanctions.  The Court leaves it to

the finder of fact and the normal process of adjudication to determine the merits of each parties'

position. See Skywark v. Isaacson, 1999 WL 1489038, at *17-18 (S.D.N.Y.,Oct. 14, 1999) (imposing sanctions pursuant to Court's inherent authority only where misconduct had so distorted the record that a fair trial was impossible).

<u>CONCLUSION</u>

Based on the foregoing, the plaintiff's motion for disqualification and monetary sanctions is denied.

SO ORDERED.

Dated: Central Islip, New York
December 22, 2005

/s/ E. Thomas Boyle
E. THOMAS BOYLE
United States Magistrate Judge